# Cornell, Appellant, v. Seddinger.

*Corporations—Directors—Dividends—Wrongful declaration of dividends.*

1. The directors of a corporation are trustees, or quasi trustees, of the capital of the company, and liable as trustees for any breach of duty with respect to the application of it. The capital of the company may not be lawfully used for the payment of dividends.

2. Directors cannot be regarded as discharging their duty, and protecting the trust imposed upon them, when they accept the report of the treasurer of the company, which upon its face calls for explanation and analysis, and after merely seeing that it purported to show profits, proceed without further investigation to declare dividends.

3. The directors of a ship building company cannot excuse themselves from liability, where they have wrongfully declared dividends out of capital, on the ground that they were not practical ship-builders, and not personally familiar with processes of construction, where it appears that if they had examined with even the most ordinary care, the reports of the treasurer submitted to them, they would have discovered glaring inflations of value, serious impairment of capital, and shortage of working capital; nor are they relieved from liability because the report of the receiver of the company showed that the assets exceeded the liabilities when the company passed into the hands of the receiver, if an inspection of the report shows that in making it up, the capital stock was not taken into consideration as a liability.

*Appeals—Assignments of error—Exceptions in equity.*

4. Assignments of error to the dismissals of exceptions to an

adjudication in equity are defective if neither the exceptions nor the order of the court dismissing them are set forth totidem verbis in the assignments.

Mr. Chief Justice Fell, dissents.

Argued March 22, 1912. Appeal, No. 155, Jan. T., 1911, by plaintiff, from decree of C. P. No. 2, Phila. Co., March T., 1908, No. 2619, dismissing bill in equity in case of Howard E. Cornell, Receiver of the Neafie & Levy Ship & Engine Building Company, Penn Works, Philadelphia, v. Mathias Seddinger, John H. Watt, Eli Kirk Price, Somers N. Smith, Laurence B. Levy, Administrator of the Estate of Edmund L. Levy, deceased, and William C. Watt and Louis H. Watt, Executors of the last will and testament of John H. Watt, deceased. Before Fell, C. J., Brown, Potter, Elkin and Stewart, JJ. Reversed, in part.

Bill in equity for an accounting. Before Wilt-bank, J.

The opinion of the Supreme Court states the case.

The court below entered the following decree:

And now, to wit, this 28th day of November, 1910, the above case coming on to be heard upon bill, answer and proofs, and the exceptions filed to the original opinions having been dismissed, and for the reasons set forth in the said opinion, it is now ordered, adjudged and decreed as follows:

1. That as to the defendants, John H. Watt and Eli Kirk Price and Laurence B. Levy, as administrator of the estate of E. L. Levy, deceased, the bill of complaint be dismissed, the cost as to these three defendants to be paid by the complainant.

2. That the defendants, Mathias Seddinger and Somers N. Smith are severally and jointly liable under the terms of the said bill, and that they be and are hereby ordered and decreed to pay to Howard E. Cornell, Receiver of the Neafie & Levy Ship & Engine Building Company, Penn Works, Philadelphia, the sum of

one hundred and twenty-four thousand ($124,000) dollar, covering the depletion of the capital stock by the declaration of dividends by the Neafie & Levy Ship & Engine Building Company, Penn Works, Philadelphia, on or about the 25th day of November, 1901, the second day of April, 1902, and the 30th day of March, 1903, together with interest on $28,000 from December 10th, 1901; on $48,000 from April 7th, 1902, and on $48,000 from April 6th, 1903.

*Error assigned,* among others, was (1) the decree of the court, quoting it.

*George Quintard Horwitz,* with him *William T. Wheeler,* for appellant.—In case of insolvency the capital stock is a trust fund for the benefit of all the creditors of a corporation: Lane's App., 105 Pa. 49.

Counsel have been unable to find any reported case in Pennsylvania in which an action was brought to recover upon the common law liability of directors for the ultra vires payment of dividends, but recovery has frequently been had in England upon this fundamental liability, the only provision upon which the cases, hereafter to be cited, are founded, being the section of the Companies' Act which provides that the liquidator may enforce the payment of any sums unlawfully expended: Flitcroft's Case, L. R. 21 Ch. Div. 519; Nat. Funds Assurance Co., L. R. 10 Ch. Div. 118.

These appellees were bound by the company's bylaws. They were not allowed any latitude as to dividends. These could not be declared except out of profits and then only prudently: Trustees Mut. Bldg. Fund & Dollar Savings Bank v. Bosseiux, 3 Fed. Repr. 817.

Kisterbock's App., 51 Pa. 483, clearly points out the knowledge of affairs that a director must possess.

See also Githers v. Clarke, 158 Pa. 616; McGowan v. Steamboat Co., 181 Pa. 55.

Leeds Est., Bldg. & Investment Co. v. Shepherd, L. R. 36 Ch. Div. 787, is a most authoritative case.

In the case at bar the balance sheet or treasurer's report was delusive in that it did not represent the true character of "Work in Progress" and is therefore not ruled by Stringer's Case, L. R. 4 Ch. App. 475, where the sheet clearly showed the nature of the assets and the claimants gave credit with a full knowledge of the hazardous nature of the company.

Oxford Benefit Bldg. & Investment Society, L. R. 35 Ch. Div. 502, is a case that is particularly applicable to the facts here developed.

See also Municipal Freehold Land Co. v. Pollington, 63 L. T. (N. S.) 238; Salisbury v. Metropolitan Ry. Co., 22 L. T. (N. S.) 839; Martin v. Webb, 110 U. S. 7 (3 Sup. Ct. Repr. 428); Scott v. Eagle Fire Co., 7 Paige's Ch. 198; Maisch v. Saving Fund Soc., 5 Phila. 30; Hutchinson v. Curtiss, 92 N. Y. Supp. 70; Appleton v. American Malting Co., 54 Atl. Repr. 454; Whittaker v. Bank, 52 N. J. Eq. 400 (29 Atl. Repr. 203); Gratz v. Redd, 4 B. Monroe (Ky.) 178; Shields v. Hobart, 172 Mo. 491 (72 S. W. Repr. 669); Penna. Iron Co. v. MacKenzie, 190 Mass. 61 (76 N. E. Repr. 228); Rorke v. Thomas, 56 N. Y. 559; Swartley v. Creamery Co., 135 Iowa 573 (113 N. W. Repr. 496); Main v. Mills, 6 Biss. 98.

*John G. Johnson,* with him *Maurice Bower Saul,* for appellees.—Directors who act in good faith in declaring a dividend out of capital are not to be held liable if subsequently it turns out that the assets were incorrectly stated by the treasurer or if the assets afterward prove worthless. A director is under no duty to examine the books of the corporation, and if under the circumstances of this case liability is imposed upon directors, no business man could be induced to act upon any board. It is an utter impossibility for any man in a large corporation such as this to ascertain the cor-

rectness of a subordinate's report.   In large corporations there must be a delegation of duties and where as in this case the business amounted to over $3,000,000, the absurdity of the appellant's contention is evident: Witters v. Sowles, 31 Fed. Repr. 1; Spering's App., 71 Pa. 11; Watts's App., 78 Pa. 370; Swentzel v. Penn Bank, 147 Pa. 140; Com. v. Bldg. & Loan Association, 20 Pa. Superior Ct. 101; Hallmark's Case, L. R. 9 Chancery Div. 329; Stringer's Case, L. R. 4 Chancery App. 475.

The remedy under the statutes of Pennsylvania is exclusive of any rights of common law, and the failure to proceed in the statutory method is fatal to the appellant's appeal: Miller Paper Co. v. York Coated Paper Co., 34 Pa. Superior Ct. 315.

*William T. Wheeler* and *George Quintard Horwitz,* in reply.—That there is both a common law and a statutory liability on the part of the directors of a Pennsylvania corporation, has been held over and over again in well considered cases in the State of Pennsylvania: Gunkles' App., 48 Pa. 13; Miller Paper Co. v. York Coated Paper Co., 34 Pa. Superior Ct. 315; Lane's App., 105 Pa. 49; Bell's App., 115 Pa. 88; Swearingen v. Dairy Co., 198 Pa. 68; Cook v. Carpenter, 212 Pa. 165.

The bill in equity filed in this case was not for the purpose of holding the directors liable for the debts of the corporation and hence does not come within the purview of Section 24 of the Act of April 29, 1874, P. L. 73. This action on the contrary was to compel the directors to replace the funds in the capital stock of the company which were wastefully paid out by their ultra vires acts.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

This was a bill in equity filed by Howard E. Cornell, Receiver of the Neafie & Levy Ship and Engine Building Company, Penn Works, Philadelphia, against Mathias Seddinger, John H. Watt, Eli Kirk Price, Somers

N. Smith and Laurence B. Levy, Administrator of Edmund L. Levy, deceased. The purpose of the bill was to compel the defendants to repay to the company certain sums which it was alleged the defendants, as directors had wrongfully declared as dividends, when as a matter of fact there were no profits to divide, and the so-called dividends were paid out of capital.

During the proceedings, John H. Watt died, and his executors were substituted. Separate answers were filed on behalf of each of the defendants. Issues were joined, and after hearing, the learned chancellor in the court below found the facts substantially as follows: the Neafie & Levy Ship and Engine Building Company, Penn Works, was incorporated under the Act of April 29, 1874, P. L. 73, on March 5, 1891, with an authorized capital of $800,000, and carried on business in Philadelphia until December 9, 1904, when it was placed in the hands of receivers under proceedings in Court of Common Pleas No. 5, of Philadelphia County. On January 1, 1901, Somers N. Smith, Mathias Seddinger, John H. Watt, Eli Kirk Price and Edmund L. Levy were elected directors of the corporation, and they all continued in office until April, 1904. Levy died November 2, 1905, intestate, and Laurence B. Levy is administrator of his estate. Mathias Seddinger was elected president, and Somers N. Smith vice-president from year to year from 1900 to 1904 inclusive. The former received a salary of $10,000 per annum, and the latter, who was also general manager, $15,000 per annum. The dividends which are here in question, were declared by the directors as follows:

On November 25, 1901, one of 3½ per cent., $28,000
On April 2, 1902, one of 6 per cent., ....... 48,000
On March 30, 1903, one of 6 per cent., ..... 48,000

These dividends were in each case paid shortly after they were declared. During the period from 1900 to 1904, the company was engaged in building three torpedo boat destroyers, and a cruiser for the United

States Government, and the business was carried on at a loss. The original capital of $800,000 was largely impaired, being depleted by a sum in excess of $760,000, leaving only a nominal amount. The dividends above referred to were paid, not out of profits, but out of capital. In placing the responsibility for this action upon the directors, the trial judge distinguished between the directors Seddinger and Smith, who were executive officers of the company, and the other three directors, Price, Levy and Watt, and held that the former were liable for the amount of the dividends improperly declared and paid, but the other three, he relieved from responsibility, and directed that as to them, the bill be dismissed. Whether or not he was correct in making this distinction is the important question raised by this appeal. Exceptions were filed by the plaintiff, which were overruled, and a final decree was entered, dismissing the bill as to Directors Price and Watt and the Levy estate.

The plaintiff has appealed. Eighty-five assignments of error have been filed, all of which except the first are to the dismissal of exceptions filed by plaintiff. These assignments are not in proper form, because neither the exceptions nor the orders of court dismissing them are set forth totidem verbis, as required by the rule. The first assignment of error, however, is to the final decree of the court below, dismissing the bill as to the three defendants, Price, Watt and Levy, and under this assignment all questions relating to the liability of these defendants may be considered.

A careful examination of the evidence shows that the learned chancellor was abundantly justified in the general conclusion which he reached, and stated as follows: "I find as matter of law, that at the time of the declaration of the several dividends exhibited by the proofs, there had been an impairment of the capital of the corporation, which impairment was increasing, in increasing volume from time to time as and when additional dividends were made, estimating the depletion as aris-

ing on or about the 25th of November, 1901, the 2nd of April, 1902, and the 30th of March, 1903." These dates, it will be noticed, were those of the declaration of the dividends of which complaint is made. It may be regarded as settled law, that directors of a corporation are trustees, or quasi trustees of the capital of the company, and liable as trustees for any breach of duty with respect to the application of it. The capital of a company may not lawfully be used for the payment of dividends. It was so used, in the present case. At whose instance and direction was this done? Obviously by the board of directors. But, says the learned chancellor, three of the members of the board were not practical ship builders, or were not personally familiar with the processes of construction, and therefore they were excusable for accepting the reports at their face value, without further inquiry. We are not able to accept this theory as applicable to the facts of the present case. No special knowledge of the details of ship building was required in order to determine whether or not a dividend might properly be declared. Certain reports of the treasurer were presented to the directors at the meeting of the board. These reports were made up by the treasurer partly from the books and partly from information from the executive officers as to the inventories of stock on hand, work in progress, etc. These items included very large amounts which were not available as assets in any proper sense of the word, as a basis for the declaration of dividends. For instance, it was shown that under the head of "Work in Progress" it was the custom to charge up all the money expended for the construction of certain vessels, without any regard to the price at which these vessels had been sold. On three torpedo boat destroyers, the company received under its contract less by more than $180,000 than the vessels cost to build. Yet the total cost was carried upon the books as an available asset, under the head of "Work in Progress." Any inquiry into the make-up of

this item would have disclosed its hollowness in so far as its fitness to be considered as a basis for dividends was concerned. The method of accounting was entirely wrong. Inflations of various kinds were in existence, of so glaring a nature that any fairly competent man, who paid any attention to the make-up of the items appearing upon the face of the reports, would have found that instead of apparent profits, there was in reality an impairment of the capital. The defense of Directors Price, Watt and Levy was that they relied upon the face of the reports of the treasurer, as showing profits, without making any inquiry as to the nature of the items reported as available assets. Directors can hardly be regarded as discharging their duty, and protecting the trust imposed upon them, when they accept a report which upon its face calls for explanation and analysis, and after a glance at it, to see that it purports to show profits, proceed without further investigation to declare dividends. Yet it is admitted that this is practically what was done. Nor was the general condition of the company such as to blunt the senses of the directors to the need of scrutinizing the reports. The minutes show that at the time these various dividends were declared, there was a shortage of working capital, and the directors were considering the necessity of borrowing money, both upon notes and by mortgaging the real estate. It is admitted that two of the directors had personal knowledge of the real condition of the company, and after a careful examination of the evidence, we cannot avoid the conclusion that the other directors might, by the exercise of common prudence, have readily ascertained the worthless character of much that was carried upon the reports of the treasurer as assets. As well might a board include the expense account of a corporation as a basis for dividends, as that which was reckoned by this board as part of the assets of the company. As a matter of course, any such account must be deducted from the apparent profits before a basis for considering the declaration of

a dividend, can be reached. The failure of the directors to investigate the character of the items of the report, led them to declare dividends when there was no surplus of profits to divide. This action was not merely an error of judgment, but was the result of lack of attention to the real condition of the company. Mere ignorance of facts which they could easily have ascertained cannot excuse them for the performance of illegal acts, in declaring dividends out of capital. It was the duty of the directors to inform themselves as to the actual condition of the company before declaring dividends. If they had made full inquiry and reasonable examination, and had been misled by erroneous information on which they had the right to rely, that might have served as an excuse for distributing capital instead of profits. But nothing of the kind appears from the evidence.

The bill in this case was not filed to secure payment by the directors of the debts of the corporation, but its purpose was to compel the directors to replace funds of the company which they wrongfully paid out as dividends. It is suggested in the argument of counsel for appellee Price, that the report of the receiver showed that the assets exceeded the liabilities when the company passed into the hands of the receiver. An inspection of this report shows, however, that in making it up, the capital stock was not taken into consideration as a liability.

The first assignment of error is sustained, and the decree of the court below is reversed, in so far as it directs the dismissal of the bill of complaint against John H. Watt and Eli Kirk Price and Laurence B. Levy, as administrator of the estate of E. L. Levy, deceased. It is adjudged that all the directors by their conduct rendered themselves jointly and severally liable under the terms of the bill, and the plaintiff is entitled to the same relief with respect to all of the defendants as was extended to him with respect to the defendants Seddinger

and Smith. It is further ordered that the record be remitted to the court below, in order that a decree may be entered in accordance with this opinion.

FELL, C. J., dissents.