## Pardee et al., Appellants, v. The Harwood Electric Company.

*Corporations—Dividends—Preferred stock—Directors — Discretion—Review by court—Operating expenses—Future exhaustion of coal—Equity—Finding of chancellor.*

1. So far as not regulated by contract the question of dividends on corporate stock is committed largely to the directors and while their action may be reviewed by the courts, it will not be set aside except in case of bad faith, or where arbitrary or manifestly erroneous, or such as to constitute an abuse of discretion or disregard of official duty.

2. In the absence of an express stipulation, what shall constitute operating expenses, or what amount of earnings should be set aside to cover operating expenses, is a matter primarily for the directors of the corporation to decide.

3. A public service corporation is not required to declare such dividend as will destroy or impair its efficiency.

4. The rule that the findings of a chancellor approved by the court below are entitled to the same weight as the verdict of a jury is especially applicable where such findings are the result of an investigation of the business affairs of a manufacturing corporation, its system of bookkeeping, etc.

5. The fact that certain balances are denominated in the books of a corporation as net earnings is, as against the corporation, persuasive but not conclusive evidence that they are such; in the absence of intervening rights, they are subject to explanation.

6. In a suit in equity to compel the payment of dividends on preferred stock of a public service corporation with which other companies had been merged it appeared that the certificates for such stock provided that the board of directors must declare certain dividends thereon from earnings in each fiscal year "after payment of all operating expenses and fixed charges." The defendant set aside from earnings a reserve for the purpose of providing for bad debts, for depreciation of plant and property, and for depreciation of physical assets of subsidiary companies, and workmen's compensation, and the lower court found that such reserve was properly created and after its creation there were no funds that could be applied to the payment of dividends. There was no allegation of fraud or bad faith on the part of the directors. *Held,* the bill was properly dismissed.

7. Where in such case, it appeared that defendant had been merged with certain coal companies and had set aside a reserve to cover the exhaustion caused by the mining of coal belonging to one of the subsidiary companies, such practice was not open to criticism, as, if it had not been followed, the defendant's capital would be impaired when the coal supply became exhausted.

Argued March 27, 1918. Appeal, No. 53, Jan. T., 1918, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., Sept. T., 1916, No. 4089, in equity dismissing bill in equity to compel a corporation to pay dividends on preferred stock in case of Calvin Pardee, Ario Pardee, Calvin Pardee, Jr., and Louis Pickert, Jr., v. The Harwood Electric Company. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity to compel a corporation to declare dividends on preferred stock. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiffs appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and law and the decree of the court.

*Reynolds D. Brown,* of *Brown & Lloyd,* and *Russell Duane,* of *Duane, Morris & Heckscher,* with them *John Hampton Barnes,* for appellants.—The right of the preferred stock as to the declaration of dividends did not depend upon the discretion of the board; the payment was obligatory under the conditions named in the contract.

The sum of $146,000 charged from earnings for 1916 was not an operating expense, but a fixed charge for that year and the contract rights of complaints cannot be affected by such a deduction.

The preferred stock cannot be deprived of dividends by the failure of the company to show this $146,000 as earnings.

*Abraham M. Beitler,* with him *Paul C. Hamlin* and *William Jay Turner,* for appellee.—The charge of $146,-000 made in 1916 to cover the depreciation caused by mining was proper. There was no contract compelling the declaration of dividends on the preferred stock: Bond v. Barrow Haematite Steel Co., 1 Ch. (1902) 353; McLean v. Pittsburgh Plate Glass Co., 159 Pa. 112; N. Y., Lake Erie & Western R. R. Co. v. Nickols, 119 U. S. 296; Belfast & M. L. R. R. Co. v. Belfast, 77 Me. 445; Elevator Co. v. Memphis & Charleston R. R. Co., 85 Tenn. 703; Field v. Lamson & Goodnow Mfg. Co., 162 Mass. 388; Burk v. Ottawa Gas & Electric Co., 87 Kansas 6; Warren v. Queen & Co., 240 Pa. 154.

The refusal of the directors to declare dividends was justifiable even if there were earnings: Corgan v. Lee Coal Co., 218 Pa. 386; Goetz's Est., 236 Pa. 630; Cornell v. Seddinger, 237 Pa. 389; Loan Society of Philadelphia v. Eavenson, 248 Pa. 407; Prudential Loan Society v. Mayer et al., 25 Dist. 885.

OPINION BY MR. JUSTICE WALLING, July 17, 1918:

This action in equity is to compel the payment of dividends on preferred stock of the defendant corporation.

It was heard upon bill, answer and testimony. The Harwood Electric Company, defendant, is a Pennsylvania public service corporation organized March 1, 1912, by merger with ten other corporations. It has $3,000,000 of common stock and $688,000 of preferred stock. The certificates for the latter provide, inter alia: "The holders of the preferred stock shall be entitled to receive cumulative dividends at the rate of six per cent. per annum, which must be declared by the board of directors, when earned, to the extent of and only from the undivided net earnings of the Harwood Electric Company remaining after the payment of all operating expenses and fixed charges, in each and every fiscal year and which shall be in preference and priority to any payment in or for such fiscal year, of any dividend on other stock. If, after providing for the payment of full dividends on the said preferred stock, for any fiscal year and all arrearages of dividends due thereon at not exceeding six per cent. per annum there shall remain any surplus net earnings, the board of directors of the Harwood Electric Company may declare, and out of such surplus net earnings may pay, dividends upon any other stock of that company." For the first two years, ending March 1, 1914, dividends on the preferred stock were paid as therein provided. Meantime by transfer of stock the company passed from the control of the plaintiffs, who organized it. No dividends were ever paid on the common stock, and none since March 1, 1914, on the preferred stock, and the chancellor found both as a matter of fact and law that the evidence failed to show any net earnings available for that purpose. His findings were approved by the court below and the bill was dismissed; plaintiffs brought this appeal.

Defendant has an interest-bearing debt of about three million dollars and there is no doubt as to its amount or as to fixed charges; the controversy is as to operating expenses. The contract between defendant and its preferred stockholders is silent as to what shall constitute

operating expenses or by whom it shall be determined. That is primarily a question of fact and we find no error in the conclusion of the chancellor that: ' "The reserves set aside by the defendant company for the purpose of providing for bad debts, for depreciation of plant and property, for depreciation of the physical assets of subsidiary companies to cover the merger value in excess of the par value of the securities thereof, for depreciation of automobiles, for depreciation of waste coal, culm and slate banks, and for workmen's compensation are all of them proper operating expenses for the protection and preservation of the capital of the company for the benefit of all the stockholders." It is largely a matter of business practice and the above finding is based on the evidence. In the absence of an express stipulation, what shall constitute operating expenses is a matter primarily for the directors of the corporation. In fact, so far as not regulated by contract, the question of dividends on corporate stock is committed largely to the discretion of the directors; and while their action may be reviewed by the courts it will be set aside only in case of bad faith, or when arbitrary, or manifestly erroneous, or such as to constitute an abuse of discretion or disregard of official duty. See 7 R. C. L., Sec. 269; McLean et al. v. Plate Glass Co., 159 Pa. 112, 117; N. Y., L. E. & W. R. R. Co. v. Nickols, 119 U. S. 296; Corgan v. Lee Coal Co, 218 Pa. 386. "The affairs of a corporation are managed by a board of directors, who, in the first instance, are to determine whether profits have been earned and whether, in their discretion, they ought to be divided among the shareholders:" per opinion of present Chief Justice BROWN in Goetz's Est. (No. 1), 236 Pa. 630, 635. In the case at bar there is no question of fraud or bad faith or suggestion that the directors were animated by improper motives, and we find nothing in the record to indicate a want of sound business judgment upon their part. The corporation must have a reasonable working capital and be kept in such a state of efficiency as to properly serve

the public. The owners of preferred stock are stockholders and not creditors and dividends can be declared in their favor from the net profits but never so as to impair the capital stock of the corporation: Act of May 23, 1913, P. L. 336; Act of April 29, 1874, Sec. 16, P. L. 81 (1 Stewart's Purdon, p. 803) ; Gillingham v. Gillingham & Son Co., 260 Pa. 559. An improper declaration of dividends constitutes a breach of trust that will render the directors individually liable: Loan Society of Philadelphia v. Eavenson, 248 Pa. 407. See also Cornell v. Seddinger, 237 Pa. 389. When defendant began business March 1, 1912, it had a surplus of $363,880.93. On December 31, 1916, its surplus was $342,254.38, showing a net loss of surplus capital of $21,626.55. This surplus, which had existed from the time of the merger, could not be regarded as net earnings, nor considered as such on the question of dividends to the holders of preferred stock.

At the merger the stock of subsidiary corporations, including that of the Harwood Coal Company, was taken by defendant at an over valuation and so carried on the books. The property of the coal company, consisted largely of coal and culm that are being rapidly exhausted by the defendant company. This exhaustion depreciates the value of the coal company stock; to meet which, and the over valuation, defendant in 1916 set aside $146,000 as an amortization or a sinking fund, which covered the five years, 1912 to 1916, inclusive. The evidence shows this to be proper practice, otherwise, for example, when the property of the coal company is exhausted its stock will be worthless and defendant's capital to that extent impaired. It seems to be a method which in effect creates a fund to make good the coal or other material that is consumed, the same as a fund may be set aside to replace machinery that wears out or becomes obsolete. See Knoxville v. Knoxville Water Co., 212 U. S. 1; People ex rel. Jamaica W. S. Co. v. Tax Comrs., 196 N. Y. 39; Park v. Grant Locomotive Works, 40 N. J. Eq. 115, 120;

74 PARDEE et al., Appel., *v.* HARWOOD ELECTRIC CO.

Mobile & Ohio R. R. Co. v. Tenn., 153 U. S. 486; 2 Cook on Stockholders (7th Ed.) Sec. 546. It cannot be determined as a matter of law that it is not an operating expense. A public service corporation is not required to declare such dividends as will destroy or impair its efficiency. The evidence supports the chancellor's findings in effect that defendant's business has been properly managed and that the different funds set aside to maintain the property, etc., are such only as good business judgment requires, and also that the refusal to declare dividends was in good faith and not arbitrary. The rule that the findings of a chancellor approved by the court below are entitled to the same weight as the verdict of a jury is especially applicable where such findings are the result of an investigation of the business affairs of a manufacturing corporation, its system of bookkeeping, etc.: Childs v. Adams, 43 Pa. Superior Ct. 239.

In our opinion, to so construe the contract between defendant and the holders of its preferred stock as to require the payment of dividends, when it would lessen the efficiency of the corporation to serve the public, would be to render the contract to that extent invalid. Such company cannot so contract with its stockholders as to destroy its usefulness as a public service corporation: See Warren v. Queen & Co., 240 Pa. 154, 161.

The fact that certain balances are denominated in the books of a corporation as net earnings is, as against the corporation, persuasive but not conclusive evidence that they are such. In the absence of intervening rights, they are subject to explanation.

As plaintiffs cannot prevail in this action, the question of cumulative dividends need not be considered.

The assignments of error are overruled and the appeal is dismissed at the costs of appellants.