## Pennsylvania Knitting Mills, Appellant, *v.* Bayard et al.

*Corporations—Officers—Misconduct of officers—Sale of assets—Illegal dividends—Equity—Findings of fact.*

1. While it is true that a chancellor's findings of fact, supported by evidence, have the force of a jury's verdict, yet where there is no evidence to support them, or the findings are based on an inference erroneously taken, they will be reversed on appeal.

2. Transactions between two companies having a majority of their directors in common, are presumptively fraudulent, unless expressly authorized or ratified by the stockholders, especially where the transaction is to the advantage of one and at the expense of the other.

3. Directors of a corporation are responsible for dividends paid out of capital, even though based on a treasurer's report showing earnings, where in fact no earnings had been made with which to pay dividends.

4. Directors are required to make reasonable investigation as to the capacity of the company to pay dividends.

5. If dividends are based on loans or accounts recoverable, not checked up, and not subsequently collected, the directors may be held liable.

Argued April 19, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 121, Jan. T., 1926, by plaintiff, from decree of C. P. No. 1, Phila. Co., June T., 1924, No. 1051, dismissing bill in equity, in case of Pennsylvania Knitting Mills Corporation v. Morris L. Bayard et al. Reversed.

Bill for accounting and discovery. Before BARTLETT, P. J.

The opinion of the Supreme Court states the facts. Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Frederick H. Warner,* for appellant.—Where there are no actual earnings and where the dividends are declared simply against accounts receivable, it must be borne in mind, that the test of the liability of directors, in declaring dividends, is not a question of actual fraud, but a question of ordinary business prudence: Cornell v. Seddinger, 237 Pa. 389; Phila. L. Society v. Eavenson, 248 Pa. 407.

The chancellor ignores the established rule that transactions between two companies with the same officers and directors, having a majority in both companies, are to be deemed presumptively fraudulent: Corsicanna Nat. Bank v. Johnson, 251 U. S. 80.

*Morris Wolf,* of *Wolf, Patterson, Block & Schorr,* with him *William Sandberg,* for appellees, cited: Swentzel v. Bank, 147 Pa. 140; Briggs v. Spaulding, 141 U. S. 132.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

The Pennsylvania Knitting Mills Company, a corporation of this State, called for brevity the old or Pennsylvania company, was engaged in the manufacture of knitted goods. In the latter part of 1921 it had apparently large inventories, heavy liabilities, and a small amount of current assets. Its officers, in Febru-

ary, 1922, organized a Delaware corporation of the same name. The purpose was to sell first preferred stock and use the money received therefrom in the Pennsylvania company's business.

The officers and directors of both corporations were the same, with one exception. Control of the new or Delaware company was then obtained by transferring to it the stock of the Pennsylvania company for second preferred and common stock.

Of the authorized issue of $500,000 of first preferred stock to be sold to the public, $172,000 was actually sold by the Pennsylvania company's officers. This money was thought to be sufficient to rescue the derelict Pennsylvania company.

The new or Delaware company transferred to the Pennsylvania company the entire sum realized from the sale of first preferred stock, less an item for dividends, receiving notes in exchange. It is stated a 20% commission was paid by the Pennsylvania company to their directors, as individuals, for selling the stock. This commission was, with some additional expense for stationery, charged as a debt against the Delaware company. Dividends on this first preferred stock sold were paid in June, September and December of 1922 from the sum retained from the proceeds of the sale of that stock, avowedly out of interest on the notes given by the Pennsylvania company which had accrued but which had not been paid. We shall consider later whether these payments were out of income.

To liquidate in part these notes, a transfer of the machinery in place from the old to the new company was made. The price fixed was some $150,000. For the balance due a note was given, but it was offset by the 20% commission and other charges above mentioned, leaving the new company a debtor to the old, and in possession of a lot of second-hand machinery.

The Pennsylvania company, within ten months, went into the hands of a receiver; it cannot pay more than ten

cents on the dollar. The Delaware company, with new officers, is now groping about to discover some of its lost funds. The public, which had been induced to buy the preferred stock of the Delaware concern, finds itself holding an empty bag.

This bill was brought against the former officers to compel discovery and accounting; the court below refused to grant either, and dismissed the bill. The case is now before us on appeal.

As we read the record, it is a most deliberate attempt to defraud innocent purchasers of the stock. It may be that this impression is a result of appellees' failure to present their side of the case. But it is certain that a number of persons, relying on the statements of these officers, contained in advertisements and the prospectus, have, through a practice that cannot be too strongly condemned, lost a large sum of money. In such cases, courts should extend every means the law affords to cause the directors, as mandatories if not trustees, to account for the property entrusted to them.

While it is true that a chancellor's findings of fact, supported by evidence, have the force of a jury's verdict, it is likewise true that, where there is no evidence to support them, or the finding is based on an inference erroneously taken, they will not stand: Worrall's App., 110 Pa. 349, 362; Bergner v. Bergner, 219 Pa. 113, 116; McConville v. Ingham, 268 Pa. 507, 519; Hamilton v. Fay, 283 Pa. 175, 179. None of the findings material to this case can be sustained.

The finding that the loans to the Pennsylvania company were made in good faith for the purpose for which the stock was issued is clearly erroneous, in view of the facts as they appear from the record. The only evidence we have on the subject is contained in the advertisement or the prospectus. The purpose stated therein was not to pay debts or to take up factor's loans, or factor's commissions, etc., as suggested by counsel in an objection to certain evidence. As appears in the prospectus, "The

Delaware Company intends to take over a property in Grassland......consisting of a stone factory building and 10½ acres of land with freight station and railroad siding, within thirty minutes of the center of Philadelphia......and there install its spinning mill, thereby eliminating the rental space.....Other purposes of this issue are to provide funds to enable the company to fill the quantity of advance orders on hand and to do the very large business available during the next eleven months, which larger business the company can handle at an increased profit with its present facilities." Then follows the alluring statement as to earnings. "Sales for the past three years have averaged nearly $1,500,000 annually. Net earnings applicable to dividends, on the first preferred stock for the past three years after depreciation, have averaged over two and one-half times the dividend requirements of this issue." Observe the record, as given below.

The Pennsylvania company then had current liabilities amounting to $659,000, with $13,000 cash and $57,-000 accounts receivable, with a large inventory of $659,-000 in raw material and merchandise which, when the receiver was appointed, ten months later, had shrunk to less than one-third. They proposed to sell $500,000 of eight per cent first preferred stock with actual net earnings, applicable to dividends, as follows: 1918, $10,901; 1919, $20,625; 1920, $13,624; 1921, $14,956. It is idle to talk about two and one-half times dividend requirements being earned in the last three years. The statement of counsel, standing alone, that the Pennsylvania company could refinance the company factor's interest or factor's commission or charges in order to make the prospectus true, cannot be considered in the face of this prospectus. But what was actually done with the $168,000 paid over to the Pennsylvania company? True, $34,000 was paid out as commission. What of the balance? As to this the record is silent.

Apparently it was lost somewhere in the operation of the Pennsylvania company.

Undoubtedly the, Pennsylvania concern was in extremis, and ready for the legal undertaker. Instead of submitting peacefully, however, the shrewd minds of the defendants devised a scheme whereby a large sum of money was secured which, had it been used honestly in an effort to bring the old concern back to life might have extenuating circumstances; but there is no evidence here of such use, good faith, or anything to sustain a finding that this was an honest transaction. Conceding that it was the purpose of the new concern to lend money to the old, under the conditions existing at the time, it becomes a question whether the action of the directors in this case was an exercise of the good business judgment the law requires of them.

It has been stated that "transactions between two companies having a majority or all of their directors in common, are presumptively fraudulent, unless expressly authorized or ratified by the stockholders, especially where the transaction is to the advantage of one and at the expense of the other": Cook on Corporation, 8th ed., vol. 13, section 658, page 2514. "That two corporations have a majority or even a whole membership of their boards of directors in common, does not necessarily render transactions between them void, but transactions resulting from the agency of officers and directors acting at the same time for both, must be deemed presumptively fraudulent, unless expressly authorized or ratified by the stockholders": Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 90.

It is earnestly argued by counsel for appellee that the entire matter was in the best of faith. We will not discuss the matter further because the record is incomplete. The court below refused to admit evidence clearly admissible. The reports on tax returns of the company, and other admissions, with many other circumstances, should have been received. Had this been done appellee might

have presented its case fully. It is possible on final summary that a different situation may be presented, but as disclosed by this record it looks exceedingly dark. We leave all these questions open for further determination.

The Delaware company held notes in the sum of $168,-000. The two companies, through officers who were identical, sold all the machinery and equipment of the plant to the Delaware company for approximately $151,000. The agreement was therefore signed by the same persons as officers for both companies. It is difficult to find any benefit to the Delaware company as a result of this transaction. The Delaware company, through the same men, surrendered its notes to themselves as officers of the Pennsylvania company, receiving in exchange this agreement or bill of sale and a new note for $17,000 which was the balance of the former sum of $172,000. This note was more than balanced, however, by other claims against the Delaware company. Perfectly competent evidence to show the real value of the machinery at the time of transfer was refused. Notwithstanding this, we are able, from the only evidence in the record, to find this value.

This machinery was carried on the books of the company at $100,000, less a depreciation of $40,000, leaving its net worth $60,000. The testimony of a man associated with the machinery for years, competent to fix value, made it $68,000 ready for operation, or $60,000 removed. This did not include the heating plant, plumbing, electric lighting and office fixtures, all of the latter priced at $7,521. The only evidence in this case fixes the value at approximately $75,000. The company's bookkeeper corroborates this in stating that an adjustment of $48,000 was necessary to balance the books after this increased sale price to the Delaware company. There was not a scrap of evidence to justify the sum fixed, $151,000, but, on this basis, notes due to the Delaware company were wiped out.

Of course the Delaware company controlled the stock of the Pennsylvania company, and the former by this sale owned the machinery and equipment, but, if that company succeeds in holding the plant, it is quite easy to see how the Delaware company common stockholders, who are mainly these defendants, would be benefited.

Counsel for appellee made many statements in the record, but they were not evidence nor accepted as such. They offered no evidence as to real value. This finding must be set aside, as must also the finding that the transfer was for the benefit of the stockholders of the Delaware company; though not excepted to, it follows from the above conclusion.

Dividends were paid out of capital; on this statement alone the finding that the payment was not in prejudice of creditors should be set aside. It is attempted to be justified on the theory that the Delaware company earned interest on the money loaned to the Pennsylvania company. It is said there was an account receivable that would justify the dividends. No money as such earnings had ever been paid. A sum out of capital had been retained for the purpose of paying these dividends. But in any event the debt owed by Delaware company for the commissions paid by Pennsylvania company exceeded the obligation of Pennsylvania to Delaware, after the machinery sale in November, and before the last dividend. There were due amounts ranging from $9,000 to $27,000. The purpose of paying dividends is manifest. It was to induce the unwary to buy more preferred stock. Such act was a powerful lever in the sale. The payment of dividends was a manifest abuse of business discretion, which directors are supposed to possess. It was a payment out of capital and can be designated in no other way. The Delaware company is still a going concern, but, even if not, it can compel an accounting for a sum paid out from capital as dividends to the prejudice of an indebtedness of the company, even though there were accounts

receivable. In Cornell v. Seddinger, 237 Pa. 389, this court laid down a severe rule as to the payment of dividends by directors out of supposed profits. We there held directors responsible for dividends paid out of capital, even though based on a treasurer's report showing earnings, whereas, in fact, no earnings had been made with which to pay dividends. They are required to make reasonable investigations, and here, even on appellee's theory, a balancing of accounts must show payment out of capital when the first two dividends were paid, and there cannot be the slightest question as to the last one. See, as to net profits, 14 C. J. 799, 802, 805. "The value of the loans upon which the earnings were computed was not checked up and as a matter of fact the loans turned out to be valueless and the interest on the same which made up the supposed earnings of the society was never paid": Phila. Loan Society v. Eavenson, 248 Pa. 407, 410. It was not shown that the Delaware company is in process of liquidation, nor if any other creditors than the Pennsylvania company appeared. If not, this may be material on the distribution of this item.

It is ordered that the bill be reinstated and the case is remanded for further hearing, costs of this appeal to be paid by appellee.