BENEFICIAL CORPORATION v. READING & SOUTHWESTERN STREET RY. CO. (CITY BANK & TRUST CO. OF READING, Intervener).

No. 9958.

United States District Court, E. D. Pennsylvania.

June 29, 1950.

804

William A. Schnader and Earl G. Harrison of Schnader, Harrison, Segal & Lewis, all of Philadelphia, Pa., for plaintiff.

Thomas I. Snyder of Snyder, Balmer & Kershner, of Reading, Pa., and Paul H. Rhoads of Rhoads & Sinon, of Harrisburg, Pa., for defendant.

P. Herbert Reigner, of Reading, Pa., for intervening defendant.

BARD, District Judge.

This is an action by Beneficial Corporation (hereinafter called Beneficial), a Delaware corporation, against the Reading and Southwestern Street Railway Company (hereinafter called Railway), a Pennsylvania corporation, for a declaratory judgment. The City Bank and Trust Company of Reading (hereinafter called Bank), holder as trustee of 54% or the majority of Railway's outstanding capital stock, intervened as a defendant. It is now before me on the motion of the defendant and the intervening defendant for summary judgment.

In 1901 Railway leased to United Traction Company, its successors and assigns, for a term of 999 years, all of its physical properties and tangible assets together with all of its rights and franchises under which Railway had been operating a passenger railway on the streets of Reading, Pennsylvania, and the adjacent territory. Through mergers and purchases, the United Traction Company's leasehold interest is now vested in the Reading Street Railway Company.

Under the terms of the lease the lessee covenanted to pay an annual rent to the defendant-lessor in the form of semi-annual dividends to be sent directly to Railway's shareholders, to pay the interest and principal on the bonded indebtedness of the lessor, to pay a nominal sum annually for the maintenance of the lessor's organization, to indemnify and hold the lessor free from probably all liability, and in general to take over the control and operation of the business and the responsibility therefor.

The effect of this lease was to leave Railway with only the mere shell of its corporate existence.

From the inception of the lease agreement until and including February 1, 1949, all lessees have paid the annual rental in semi-annual installments direct to Railway's shareholders.

However, in recent years Railway has incurred several debts. The sum total of this alleged indebtedness is $3,348.95 plus the costs and attorneys' fees for this suit and other suits presently pending in the state courts.

The lessee has refused to pay these debts. Most of them have been paid by the Bank which in turn reimbursed itself from the dividends paid on the shares which it held as trustee, so that now the actual creditor of Railway is the beneficiary of the trust.

In order to get the necessary funds to pay these debts, since Railway had no source of income except its annual rental income from the lease, which heretofore had been paid directly to the shareholders, its Board of Directors[1] resolved on July 11, 1949 that no more dividends would be paid until the Board so declared. On or about the following day Railway notified the lessee of its action and that all cash rental payments beginning with the semi-annual payment due August 1, 1949 should be paid to Railway until further notice. Since receipt of this notice the lessee has not made any rental payments direct to the shareholders.

Beneficial, as minority shareholder of 40% of Railway's outstanding capital stock, filed its complaint under the Declaratory Judgments Act[2] on August 1, 1949. In effect, Beneficial prays this Court to declare the resolution of Railway's Board of Directors on July 11, 1949 to be null and void, and to make such orders as are necessary for the lessee to pay the rental income direct to the shareholders.

In their answers the defendant Railway and intervening defendant Bank have admitted all the pertinent facts, and this case is ripe for the determination of the defendants' joint motion for summary judgment.

Jurisdiction of this Court is based upon diversity of citizenship. Since Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it is fundamental that in diversity actions it is the law of the state that controls. And there is no doubt but that the law of Pennsylvania governs since the contract or lease was made in Pennsylvania and is to be performed here. Restatement, Conflict of Laws §§ 332, 346, 358.

To determine the defendants' motion it is not necessary for me to determine the validity of each claim against Railway, but some unquestionably are valid. Nor do I have to decide Railway's right of indemnity from the lessee. These issues are not raised by the pleadings.

The issue is whether the minority shareholders are entitled, under the terms of the lease to receive the cash rental income as dividends regardless of the existence of corporate debts and the lack of corporate funds to pay these debts.

The pertinent provision of the lease provides:

"1. Traction shall and will * * * pay annually *to Railway* as rent of the said premises hereby demised, an amount equal to fifteen thousand six hundred dollars ($15,600) lawful money of the United States, free of all taxes, in equal semi-annual installments, on the first days of February and August of each and every year. *This rental shall be paid in such way and manner as will enable the holders of the now existing Twenty-six hundred shares capital stock of Railway * * * to receive a semi-annual dividend of Three dollars ($3.00) upon each and every share on the said first days of February and August * * *.* The Railway shall furnish a list of its stockholders to Traction fifteen days before any semi-annual dividend shall be payable, and *it shall be the duty of Traction to pay such dividend directly to the stockholders on said list* at its

---

1. Although all the directors of defendant Railway are officers or employees of or in some way connected with the majority shareholder and intervening defendant Bank, this fact is not material to the issue in this case.

2. Act of June 25, 1948, c. 646, 62 Stat. 964, as amended, 28 U.S.C.A. § 2201, 2202.

office in the City of Reading." (Emphasis added.)

It seems to me that this case is governed by basic principles of corporation law.

The assets of a corporation, as between the shareholders and the creditors of the corporation, are a trust fund for the payment of the corporate debts. As such, these assets cannot be distributed as dividends to the shareholders if the payment of these dividends will prejudice the claims of the creditors. Therefore, all dividends must be declared and paid from the earned surplus which is founded upon actual earnings or net profits. Act of May 23, 1913, P.L. 336, § 1, 15 P.S. § 631; Berks Broadcasting Company v. Craumer et al., 356 Pa. 620, 623-624, 52 A.2d 571; Levin et al. v. Pittsburgh United Corporation et al., 330 Pa. 457, 469-470, 199 A. 332; Pardee et al. v. Harwood Electric Company, 262 Pa. 68, 73, 105 A. 48; 11 Fletcher, Cyclopedia of the Law of Private Corporations, § 5329.

It follows from this rule that no corporation has the power to enter into an unconditional agreement whereby the corporation will pay future dividends without regard to its condition at the time of payment. 11 Fletcher, supra § 5332; see Warren v. Queen & Co., 240 Pa. 154, 161, 87 A. 595; Pardee et al. v. Harwood Electric Company, supra, 262 Pa. at page 74, 105 A. 48.

When these principles are applied to this case, it is apparent that if the above quoted provision of the lease is interpreted as an unconditional guarantee by Railway of dividends, then to that extent the provision would be void and unenforceable.

The plaintiff contends that this provision, nevertheless, was intended to confer a benefit upon the shareholders, and thereby created a third-party creditor or donee beneficiary contract which can be enforced at this time. I disagree for several reasons.

First, there is no guarantee by the lessee, either in the lease or endorsed on the share certificates, that the lessee will pay $7,800 semi-annually to the shareholders. This fact distinguishes this case from the cases cited by the plaintiff in support of its contention, which cases were also decided according to the law of other jurisdictions.

Secondly, I think that any benefit to the shareholders is incidental rather than intended, and that therefore the third party cannot enforce the contract in his favor.

A study of all the provisions of the lease shows that all promises of the lessee, including the one to pay rent, were made to the corporation and not to its shareholders. All options to terminate the lease or to take any action upon any default of the lessee were given to the corporation. The corporation was the party that furnished the consideration for these promises.

This lease as a whole leaves Railway with nothing but its corporate name and the shell of its former existence.

These facts plus the fact that the lessee did not guarantee the payment of dividends are a very strong, uncontradicted indication that the provision in question was inserted in the lease not to confer a benefit upon the shareholders but as a convenient method for the inoperative and non-functioning corporate-lessor to declare and pay future dividends.

And thirdly, that even if this provision were intended to confer a benefit upon the shareholders, their right to enforce this provision is limited by their right to the benefit.

A stream can rise no higher than its source. The benefit the plaintiff desires is the dividends, but the plaintiff's right to these dividends is limited by the principles of corporation law which I have already discussed.

The only asset that Railway has is the rental income from the lease, and Railway must use this income to pay its debts. Until these debts are paid or funds set aside out of this income to pay them, there is no earned surplus or net income out of which to declare dividends.

Furthermore, a shareholder's right to dividends is not absolute, but arises out of the corporation's act, through its board of directors, of declaring dividends due and payable. Pardee et al. v. Harwood Electric Company, supra.

And if, under the circumstances of this case, the directors of Railway had not acted as they did in their resolution of July 11, 1949, but had allowed the income to be paid out in dividends, they might have been liable for the improper distribution of the corporation's capital. Pennsylvania Knitting Mills Corp. v. Bayard et al., 287 Pa. 216, 224, 134 A. 397; Cornell v. Seddinger, 237 Pa. 389, 85 A. 446.

Accordingly, the action of Railway's Board of Directors was proper, and the relief sought for by the plaintiffs cannot be granted. In so ruling, however, I do not mean to imply that the provision of the lease here involved is necessarily unenforceable as to future rental income when there are no corporate creditors to be paid.

The motion of the Reading and Southwestern Street Railway Company and the City Bank and Trust Company of Reading for summary judgment is hereby granted.