T. L. TOWNSEND, Acting District Director of Internal Revenue, Appellant,

v.

The HITCHCOCK CORPORATION, Appellee.

No. 7136.

United States Court of Appeals Fourth Circuit.

Argued March 23, 1956.

Decided April 9, 1956.

David O. Walter, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., and Edwin M. Stanley, U. S. Atty., Greensboro, N. C., on brief), for appellant.

Kester Walton, Asheville, N. C. (Frank Parker, and Harkins, Van Winkle, Walton & Buck, Asheville, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This appeal is by the United States, through T. L. Townsend, Acting District Director of Internal Revenue, from a judgment in favor of The Hitchcock Corporation (hereinafter called the taxpayer), which is engaged in mining talc at Murphy, North Carolina. Taxpayer's mining activities consist of extracting the talc from its deposit underground, bringing it to the surface, cutting such talc as is suitable for the purpose into crayons, and pulverizing or grinding the remainder of the talc.

The question before us relates to the income tax deduction for depletion for this talc. Specifically, we must decide whether the District Court correctly ruled that the taxpayer properly calculated its gross income from mining under Section 114(b) (4) (B) of the Internal Revenue Code of 1939, to include not only income from the extraction of talc from the ground but also the income from the grinding of talc to powder, the cutting of talc into crayons, and the packing and bagging of the talc for shipment.

For the tax year in question, 1948, taxpayer claimed a deduction for depletion computed under Section 114(b) (4) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114(b) (4) (A), in the amount of $41,329.36, equal to 15% of the gross income from the sale of talc which it mined, less the royalties paid on the leased land. The Commissioner of Internal Revenue determined that the taxpayer was entitled to no depletion deduction for that year and assessed a deficiency. The taxpayer paid this sum, filed a claim for refund which was not allowed within six months, and then instituted this timely suit for refund in the United States District Court for the Middle District of North Carolina.

The District Court, sitting without a jury, found:

"The processes of the taxpayer were those normally applied by mine operators to obtain commercially marketable products. Since the plaintiff's products were not marketable except as crayons or powder the steps necessary to produce these marketable products come within the meaning of mining under the Act and the gross income from the sale of powder and crayons should be the basis for arriving at the 15% depletion deduction." 132 F.Supp. 785, at page 787.

With this we heartily agree. The judgment of the District Court must, therefore, be affirmed.

The taxpayer was entitled for the year 1948 to a deduction for depletion of 15% of its gross income from mining, which the Government admits, should include the income attributable to the extraction of talc from its mine. The Government refused, and still refuses, to agree with taxpayer that "income from min-

ing" includes income from grinding and bagging talc and from cutting talc into crayons and packaging it for shipment. We are told that these processes do not fall within the definition of "mining" within the meaning of Section 114(b) (4) (B) of the Internal Revenue Code and that this case thus falls outside the limits set by Congress. We think such an argument by the Government is clearly contrary to the language used by Congress.

In computing net income, a deduction for depletion is allowed by Section 23 (m), 26 U.S.C.A. § 23(m):

> "§ 23. In computing net income there shall be allowed as deductions:
> * * *
>
> "(m) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion * * *."

Subparagraph (A) of Section 114(b) (4) of the Internal Revenue Code provides that in the case of certain mines and other natural deposits, including "talc" mines, the allowance for depletion under Section 23(m) is to be computed as a percentage of " 'gross income from the property' ", excluding royalties paid in respect of the property. The deduction is also limited to 50% of net income from the property. This limitation is not applicable here. The percentage specified for "talc", which is involved in this case, is 15%.

■ Subparagraph (B) of the same paragraph defines " 'gross income from the property' " as "gross income from mining" and then lays down the general rule that:

> "The term 'mining' as used herein shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products * * *."

This statutory language is clear and unambiguous. Its obvious meaning is that gross income from mining must include the income from treatment processes which must normally be applied to the ore or mineral to obtain "the commercially marketable mineral product or products," that is, the products obtained by the mine owner or operator for which a commercial market exists, the products which are marketable in commerce.

The District Court made the following Findings of Fact: "There is no commercial market for the talc mined by plaintiff before the talc is put in the form of talc crayons or pulverized talc and before such products are packaged or bagged for shipment;" "there are no sales of talc in its crude form as it comes from the mine anywhere in the United States, except for a very small percentage of the national output sold by itinerant miners on the West Coast, who do not have their own grinding equipment;" and "all the processes applied by plaintiff to its talc * * * are the usual and ordinary treatment processes normally applied by mine owners and operators in order to obtain the commercially marketable talc * * *."

In the light of these Findings of Fact by the District Court, and our reading of the Internal Revenue Code, we think it clear that the processes applied by the taxpayer are "ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products," and that such processes are included within the meaning of "mining" as used in the Internal Revenue Code.

Following the provision that "mining" includes the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral products, Section 114(b) (4) (B) provides that "ordinary treatment processes * * * shall include", in respect to certain ores and minerals, a number of specifically listed processes; and in respect to certain ores, it provides that certain processes are excluded.

The Government argued before us that these lists exclude all of taxpayer's processes except the extraction of talc from underground and bringing it to the surface. First of all, we notice that talc, which is a mineral, is not specifically mentioned in these lists, nor does it appear that any of these four subsections has any application to talc.

Furthermore, the lists of processes are in no way exclusive, even as to the ores and minerals covered. The statute merely states that the term ordinary treatment processes "shall include" the listed processes. Section 3797(b) of the Internal Revenue Code of 1939 specifically states that:

"The term 'includes' and 'including' * * * shall not be deemed to exclude other things otherwise within the meaning of the term defined."

The District Court stated:

"Congress clearly provided that the cost of obtaining a marketable product should come within the definition of mining and the same basis should be applied to gross sales. The only limitation by Congress is that the process must be that normally applied by the miner to obtain a marketable product. It seems immaterial whether that process be one of manufacture as in the brick and tile case. [United States v. Cherokee Brick and Tile Co., 5 Cir., 218 F.2d 424], or some other step; that which was essential to obtain the first marketable products is an expense of mining and the gross sales of the products so mined is the gross income from which the 15% depletion is to be taken." 132 F. Supp. at page 787.

In International Talc Co. v. Commissioner, 15 T.C. 981, it was held that the depletion deduction should be computed on the selling price of the pulverized talc in bags (here, we are concerned in addition with talc crayons). In related fields, see United States v. Cherokee Brick & Tile Co., 5 Cir., 218 F.2d 424, affirming D.C., 122 F.Supp. 59; and Haviland Clay Works Company v. United States, 1956 P.-H. Fed.Tax Rep. No. 72,449, which involved the status of the depletion deduction for clay used to produce brick or tile; and New Idria Quicksilver Mining Co. v. Commissioner, 9 Cir., 144 F.2d 918, which involved this deduction for cinnabar ore.

From our review of these cases and the statute, we think it clear that the processes in which taxpayer was engaged are included in "mining" as used in the Revenue Code and that the District Court properly concluded that the 15% rate of depletion should be allowed on the selling price of both of the taxpayer's commercially marketable products, the pulverized talc and the talc crayons.

The judgment of the District Court is affirmed.

Affirmed.