**Mabel C. STRICKLAND, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 1003.**

United States District Court
E. D. North Carolina,
Raleigh Division.

July 2, 1957.

Joseph H. Levinson, Smithfield, N. C., for plaintiff.

Jane A. Parker, Asst. U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

This action was brought by one of the partners of Ideal Brick Company to recover income tax paid under protest. The facts are stipulated and the only question presented is: should the Ideal Brick Company's gross income from mining, on which a percentage depletion deduction is allowable be permitted to include not only the income allocable to processes up to the final crushing and tempering of the clay, but also to those effecting chemical and physical changes transforming the clay into brick, such as the cutting into desired shapes by an extrusion or molding machine, the burning of the cut brick in kilns and loading of the burnt brick for shipment. If the question is answered affirmatively, the plaintiff is entitled to the relief asked.

Internal Revenue Code, Sec. 613(b)(5), 26 U.S.C.A. § 613(b)(5), fixes the depletion allowance on brick and tile clay at five percent of the gross income from the property; Sec. 613(c)(1) provides that the term "gross income from the property" means (except in the case of a gas or oil well) the gross income from mining; and Sec. 613(c)(2) provides that the term "mining" includes not merely the extraction of the ores or minerals from the ground, but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product. So the critical question in the case is: in brick manufacture, at what point is the commer-

cially marketable mineral product obtained.

The Government advances rather persuasive argument for its position but all the decided cases favor the taxpayer's position. United States v. Cherokee Brick & Tile Co., 5 Cir., 218 F.2d 424; Townsend v. Hitchcock Corp., 4 Cir., 232 F.2d 444; United States v. Sapulpa Brick & Tile Corp., 10 Cir., 239 F.2d 694; United States v. Merry Bros. Brick & Tile Co., 5 Cir., 242 F.2d 708; and several more. The Government concedes that the authorities are unanimously against it, but argues they are poorly reasoned and continues its efforts to obtain a favorable decision in some circuit. Though recognizing that there is much merit in the Government's arguments, I am unwilling to disregard or overlook the decided cases, in every one of which the Court has upheld the taxpayer's view. I prefer to follow them.

The facts in Cherokee Brick & Tile were identical with the facts here. The District Court, 122 F.Supp. 59, granted taxpayer's motion for judgment on the pleadings, holding that the first commercially marketable mineral product was obtained after all the processes of manufacturing brick and tile had been completed. The Court said in 218 F.2d at page 425: "The statutory language is clear and unambiguous, which is that gross income from mining must include the income from ordinary treatment processes which must be applied to the ore or mineral in order to obtain the commercially marketable mineral product, that its, the first product which is marketable in commerce. There is no provision in the statute for excluding any process before such a marketable product is reached. The only restriction is that the processes must be the ordinary treatment processes normally applied by mine owners or operators."

Our own Circuit has settled the question in favor of the taxpayer in Townsend v. Hitchcock Corp. above. True, that was not a case involving depletion allowance in the case of brick manufacture, but in the case of mining talc. However, in resolving the question favorably to the taxpayer the Court cited with approval the Cherokee case as did the trial Court and I conclude that the decision is all that need be cited to dispose of this case.

In the Townsend case, 232 F.2d at page 447 it is written: "The District Court stated: 'Congress clearly provided that the cost of obtaining a marketable product should come within the definition of mining and the same basis should be applied to gross sales. The only limitation by Congress is that the process must be that normally applied by the miner to obtain a marketable product. It seems immaterial whether that process be one of manufacture as in the brick and tile case (United States v. Cherokee Brick & Tile Co., 5 Cir., 218 F.2d 424), or some other step; that which was essential to obtain the first marketable products is an expense of mining and the gross sales of the product so mined is the gross income from which the 15% depletion is to be taken.' * * *

"In International Talc Co. v. Commissioner, 15 T.C. 981, it was held that the depletion deduction should be computed on the selling price of the pulverized talc in bags (here we are concerned in addition with talc crayons). In related fields, see United States v. Cherokee Brick & Tile Co., 5 Cir., 218 F.2d 424 * * *; Haviland Clay Works Co. v. United States, 1956 P.-H. Fed. Tax Rep. No. 72,449 * * *; and New Idria Quicksilver Mining Co. v. Commissioner, 9 Cir., 144 F.2d 918 * * *.

"From our review of these cases and the statute, we think it clear that the processes in which taxpayer was engaged are included in 'mining' as used in the Revenue Code and that the District Court properly concluded that the 15% rate of depletion should be allowed on the selling price of both of the taxpayer's commercially marketable products, the pulverized talc and the talc crayons."

The cases close the door on arguments advanced by the Government and prob-

ably heard by the courts before. If the law is unduly favorable to the brick manufacturers, Congress must give the remedy.

A formal judgment in favor of plaintiff will be entered.