**DRAGON CEMENT COMPANY, Inc.**
v.
**UNITED STATES of America.**
**Civ. A. No. 4-90.**

United States District Court
D. Maine, S. D.
Aug. 24, 1956.

Frederic A. Collins, New York City, Herbert E. Locke, Augusta, Me., and Clark, Carr & Ellis, New York City, of counsel, for plaintiff.

Gerard J. O'Brien, Tax Dept., Dept. of Justice, Washington, D. C., Peter Mills, U. S. Atty., Portland, Me., of counsel, for defendant.

ALDRICH, District Judge.

This is an action for recovery of 1951 income taxes. All the facts appear by stipulation and undisputed affidavits, on which both parties move for summary judgment. The parties agree that one motion or the other should be granted. There are no procedural questions, but two of substance.

The first question relates to the base, which affects the amount claimable as a deduction, for depletion. Plaintiff, at Thomaston, Maine, and Northampton, Pennsylvania, mines calcium carbonate, otherwise known as cement rock, which it treats, by heat and otherwise, to convert to cement clinkers, so-called, and then grinds into powdered cement, which it packages and sells. Cement rock is a mineral. Conversion into cement clinkers involves a chemical action. Cement is a synthetic and not a natural product or mineral.

The statute requires a "reasonable allowance for depletion". 1939 I.R.C. § 23(m), 26 U.S.C.A. § 23(m). One permissible manner of calculation is the percentage method. The applicable provisions of Section 114 of the Code, as then amended, 26 U.S.C.A. § 114, provided, in part, as follows:

"(A) *In general.* The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be  *  *

"(ii) in the case of coal, asbestos, brucite, dolomite, magnesite, perlite, wollastonite, calcium carbonates, and magnesium carbonates, 10 per centum ·  *  *  *

·"(iv)  *  *  * of the gross income from the property during the taxable year  *  *  *.

"(B) *Definition of gross income from property.* As used in this paragraph the term 'gross income from the property' means the gross income from mining. The term 'mining' as used herein shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products  *  *  *."[1]

The government contends that mining terminated, and that the depletion base was arrived at, when taxpayer had prepared the cement rock for conversion, and

---

[1] This section continued as follows:

"and so much of the transportation of ores or minerals (whether or not by common carrier) from the point of extraction from the ground to the plants or mills in which the ordinary treatment processes are applied thereto as is not in excess of 50 miles unless the Secretary finds that the physical and other requirements are such that the ore or mineral must be transported a greater distance to such plants or mills. The term 'ordinary treatment processes', as used herein, shall include the following: (i) In the case of coal—cleaning, breaking, sizing, and loading for shipment; (ii) in the case of sulphur—pumping to vats, cooling, breaking and loading for shipment; (iii) in the case of iron ore, bauxite, ball and sagger clay, rock asphalt, and minerals which are customarily sold in the form of a crude mineral product—sorting, concentrating, and sintering to bring to shipping grade and form, and loading for shipment; and (iv) in the case of lead, zinc, copper, gold, silver, or fluorspar ores, potash, and ores which are not customarily sold in the form of the crude mineral product—crushing, grinding, and beneficiation by concentration (gravity, flotation, amalgamation, electrostatic, or magnetic), cyanidation, leaching, crystallization, precipitation (but not including as an ordinary treatment process electrolytic deposition, roasting, thermal or electric smelting, or refining), or by substantially equivalent processes or combination of processes used in the separation or extraction of the product or products from the ore, including the furnacing of quicksilver ores.  *  *  *"

that the subsequent process, during which it ceased to be a mineral was merely manufacture. This position, admittedly, is fully supported by administrative rulings. Treas.Reg. 111, Sec. 29.23(m)–1(f). Taxpayer contends this regulation is invalid because the portion of § 114(B) quoted above in the body of the opinion does not permit such an interpretation, but, on the contrary, compels the opposite result. In this connection certain additional facts are relevant. Except in negligible amounts, which may be disregarded, cf. Cherokee Brick & Tile Co. v. United States, D.C.M.D.Ga., 122 F.Supp. 59, affirmed, 5 Cir., 218 F.2d 424, there is no commercial market for cement rock. The first commercially marketable product is cement.[2] The methods used by taxpayer to transform cement rock into cement are admitted to be the "ordinary treatment processes normally applied by mine owners or operators" who produce cement. Taxpayer asserts, in the light of that portion of § 114(B) above-quoted, that this is all there is to it; that the fact that with respect to certain ores, which cement rock is not, the act provides that "mining" may stop short of reduction to a commercially marketable product does not contradict the fact that with respect to minerals, which cement rock is, the act, so taxpayer says, specifically provides otherwise.

Under the statute the only "ordinary treatment processes" that can be considered are those which produce the "commercially marketable mineral product or products". The question, therefore, is, what is the meaning, or is there more than one meaning, to this phrase, "commercially marketable mineral product"? The government argues that the taxpayer is construing it as if the third word were omitted—that a synthetic material cannot be a *mineral* product. Taxpayer argues that a synthetic material can be the *product* of a mineral, even though it is not itself a mineral. Putting this another way, is the word mineral used in the statute as a noun, or as an adjective?

■ It seems to me that both possibilities can, semantically, be correct,—that the matter is one of emphasis, the resolution of which depends upon the context. In a garage which advertises "petroleum products," one would expect to find gasoline and lubricating oils, which are petroleum products, not petroleum. But in a road-side store advertising "wood products" one would hardly look for turpentine and methyl alcohol. In the first instance the understood emphasis is on the product; in the second, on the wood.

The question here is, may a depletion allowance extend to a product of a mineral, although it is itself non-mineral (viz., a commercially marketable mineral *product*), or is it to be restricted to products still in a mineral state, (viz., a commercially marketable *mineral* product)? The answer should depend upon the general context and purpose. Since depletion relates to mining and not to manufacturing, I believe the emphasis must here be upon the word "mineral," as a noun. This seems both reasonable and in accordance with such affirmative statutory and administrative history as appears. Accordingly, I hold that chemical conversion, by the addition of other material and the application of heat, has passed beyond mining, to which the concept of depletion is apposite, to manufacturing, where it is not.

■■ The fact that in a particular mining operation there may, as in this case, not be any commercial market for the mineral, but only for the product manufactured from it, should not change the general meaning of the statute. Plaintiff's position would require the phrase to be interpreted "commercially marketable *mineral* product" when there was a commercially marketable mineral, and "commercially marketable mineral *product*" when there was not. This, paradoxically, would mean that the less

2. There seems to be some haziness as to whether a market exists for cement in clinker form, or only when ground to powder, but if that matter is open it does not affect the present question of which party's motion should prevail.

valuable the mineral is itself, the greater the amount of the depletion allowance. It would be difficult to escape the conclusion that if cement rock mined in Thomaston, Maine, was not commercially marketable, but if mined in Northampton, Pennsylvania it was,[3] plaintiff would be entitled to a more favorable depletion base in Thomaston than in Northampton. This would resemble subsidy, not depletion, a result not to be reached unless the language compels it.

Taxpayer cites United States v. Cherokee Brick & Tile Co., 5 Cir., 218 F.2d 424. The government seeks to distinguish that case on the ground that it did not affirmatively appear, and the court did not consider, that baking the clay to produce brick changed it from a mineral to a synthetic material.[4] However, I prefer to say, with all due respect to the court therein, that I consider it illogical, unless absolutely necessary, to base a mining depletion allowance on what was, presumably, relatively plentiful and inexpensive clay upon the cost of what was, presumably a relatively expensive process of manufacturing it into tiles and brick.[5] That result followed from the court's construing the act as unambiguously so providing. For reasons already stated I do not agree. Instead, consideration of the statute leads me to believe that its extension of the dictionary definition of mining was merely to cover incidentals, not to affect such changes of substance. Consequently, where there is no commercially marketable *mineral* product, as above defined, depletion must be mathematically calculated and computed, as it has long been done with respect to other materials, and as was done here prior to the claim for refund.

█ The second question requires a further statement. The plaintiff is a Maine corporation. During the 1920's the Lawrence Portland Cement Company, a Pennsylvania corporation, paid to the Commonwealth of Pennsylvania the sum of $12,000 as a capital stock bonus, required to be paid when it increased its stated capital, or issued authorized capital stock. This was a capital expenditure, Commonwealth v. Erie & Western Transportation Co., 107 Pa. 112, not deductible for federal income tax purposes when paid. United Gas Imp. Co. v. Burnet, 3 Cir., 64 F.2d 957. In 1951 Lawrence Portland Cement Company was merged into the plaintiff, which resulted in the disappearance of the Pennsylvania corporation as such. All rights acquired by the so-called capital stock bonus accordingly ceased. Plaintiff, who succeeded to the rights and liabilities of that corporation, claims a $12,000 loss. It has been held that the termination of such rights by a total dissolution of a corporation is a deductible tax loss. Malta Temple Association, 16 B.T.A. 408, 409; Pacific Coast Biscuit Co., 32 B.T.A. 39. The government expressly acquiesces in that view, but argues that there is a distinction between termination by dissolution and by merger. I do not agree. In confirmation of plaintiff's position its evidence, which I took indicates that substantially this bonus had to be paid over again to the Commonwealth of Pennsylvania immediately after the merger.[6] Cf. Petry v. Harwood Electric Co., 280 Pa. 142, 124 A. 302, 33 A.L.R. 1249.

It follows that the defendant is entitled to a partial summary judgment of

3. One of the reasons given for non-marketability herein is transportation expense.

4. In Townsend v. Hitchcock Corp., 4 Cir., 232 F.2d 444, affirming, D.C., 132 F.Supp. 785; New Idria Quicksilver Mining Co. v. Com'r, 9 Cir., 144 F.2d 918, and International Talc Co., 15 T.C. 981, cases also relied on by plaintiff, it clearly appeared that the product was changed only in form, and remained a mineral or ore.

Hence this question of construction could not arise.

5. In the case at bar four times as much "depletion" would be allowable if the process of conversion into cement could be included.

6. This payment was something less than $12,000, and perhaps the loss, accordingly, was that lesser figure, but I am not concerned with that on this motion.

dismissal as to the depletion claim, and the plaintiff to a partial summary judgment in its favor as to the capital stock bonus loss. Formal order to be submitted.